IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRYLYN CAME, | : |
| | : |
| Plaintiff | : Case No. 4:04-CV-1207 |
| | : |
| v. | : (Judge Jones) |
| | : |
| RORY MICOU and DECKER TRANSPORT CO., INC., | : |
| | : |
| Defendants. | : |

**MEMORANDUM AND ORDER**

June 23, 2005

**THE BACKGROUND OF THIS ORDER IS AS FOLLOWS:**

Pending before the Court is a Motion for Partial Summary Judgment ("Motion") (doc. 33) filed by Defendants Rory Micou ("Micou") and Decker Transport Co., Inc. ("Decker") (collectively "Defendants"). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

**PROCEDURAL HISTORY:**

As we explained in our October 27, 2004 Order, the plaintiff, Terry Lyn Came ("Plaintiff" or "Came") initiated this action by filing a complaint against Defendants in the United States District Court for the Middle District of Pennsylvania on June 3, 2004. (See Rec. Docs. 1, 18). Jurisdiction is proper in

this Court pursuant to 28 U.S.C. § 1332 as the parties are of diverse citizenship and the amount in controversy is over $75,000.

In the amended complaint, Plaintiff alleges that a tractor-trailer accident and injuries resulting therefrom were caused by Defendants' negligence. Counts I and II of the Complaint are negligence claims against Defendants Micou and Decker respectively, while Counts III and IV are punitive damage claims against Defendants Micou and Decker respectively.

Pursuant to our October 4, 2004 Order providing Plaintiff with twenty days to substantiate her punitive damages claims by addressing the specific portions of the Federal Motor Carrier Act ("the Act") and the Federal Motor Carrier Safety Regulations ("the Regulations") that Defendants allegedly violated, Plaintiff filed an amended complaint in which she substantiated her punitive damages claims by directing the Court to specific provisions of the Act and the Regulations that Defendants allegedly violated. (See Rec. Docs. 16, 17).

On April 14, 2005, Defendants filed the instant Motion and it has been briefed by the parties. The Motion is therefore ripe for disposition.

**STANDARD OF REVIEW:**

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."

FED .R. CIV. P. 56(c); see also Turner v. Schering-Plough Corp., 901 F.2d 335, 340 (3d Cir. 1990). The party moving for summary judgment bears the burden of showing "there is no genuine issue for trial." Young v. Quinlan, 960 F.2d 351, 357 (3d Cir. 1992). Summary judgment should not be granted when there is a disagreement about the facts or the proper inferences which a fact finder could draw from them. Peterson v. Lehigh Valley Dist. Council, 676 F.2d 81, 84 (3d Cir. 1982).

Initially, the moving party has a burden of demonstrating the absence of a genuine issue of material fact. Celotex Corporation v. Catrett, 477 U.S. 317, 323 (1986). This may be met by the moving party pointing out to the court that there is an absence of evidence to support an essential element as to which the non-moving party will bear the burden of proof at trial. Id. at 325.

Federal Rule of Civil Procedure 56 provides that, where such a motion is made and properly supported, the non-moving party must then show by affidavits, pleadings, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue for trial. FED. R. CIV. P. 56(e). The United States Supreme Court has commented that this requirement is tantamount to the non-moving party making a sufficient showing as to the essential elements of their case that a reasonable jury could find in its favor. Celotex Corp., 477 U.S. at 322-23.

It is important to note that "the non-moving party cannot rely upon conclusory allegations in its pleadings or in memoranda and briefs to establish a genuine issue of material fact." Pastore v. Bell Tel. Co. of Pa., 24 F.3d 508, 511 (3d Cir. 1994) (citation omitted).  However, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992), cert. denied, 507 U.S. 912 (1993) (citations omitted).

Still, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)(emphasis in original).  "As to materiality, the substantive law will identify which facts are material." Id. at 248. A dispute is considered to be genuine only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

**FACTUAL BACKGROUND**:

We initially note that we will, where necessary, view the facts and all inferences to be drawn therefrom, in the light most favorable to the nonmoving party, the Plaintiff, in our analysis of the pending Motion.

This action arises out of a tractor-trailer accident, which took place on September 22, 2002, on Interstate 81, near Dorrance, in Luzerne County, Pennsylvania. (See Defs.' SMF ¶ 1). The Decker tractor-trailer operated by Micou rear-ended a J & R Trucking tractor-trailer operated by the Plaintiff. Id. at ¶ 2. As a result of the accident, Plaintiff has suffered extensive injuries which we delineated in our October 27, 2004 Order. (See Rec. Doc. 18).

**DISCUSSION**:

In the Motion, Defendants argue that taking all of the evidence in the light most favorable to the Plaintiff, there is no evidence in the record which would meet Plaintiff's extraordinarily high burden to impose punitive damages on either of the Defendants. In addition, Defendants assert that neither of Plaintiff's expert liability reports address the following: whether Micou failed to properly inspect the rig prior to operation (49 C.F.R. 396.13); whether Micou failed to properly report the results of his inspection of the rig (49 C.F.R. 396.11); whether Micou operated the rig when it was in such a condition to likely cause an accident (49 C.F.R. 396.7); and Decker's training or supervision of Micou's rig inspections. (See Defs.' Mot. Partial Summ. J. at 3). Defendants therefore request that the Court dismiss with prejudice Plaintiff's punitive damages claims in their entirety and Defendants request that Plaintiff's claims that Defendants violated the portions of

the Regulations relating to the inspection of Micou's tractor-trailer, specifically 49 C.F.R. 396.7, 396.11, and 396.13, be dismissed with prejudice in both Plaintiff's negligence and punitive damages claims. Id. at 7.

### A.   Punitive Damages Standard

As we explained in our prior order, federal courts sitting in diversity cases apply federal procedural and state substantive law. Hanna v. Plumer, 380 U.S. 460, 465 (1965) (citing Erie R.R. v. Tompkins, 304 U.S. 64 (1938)(Federal courts sitting in diversity cases, when deciding questions of "substantive" law, are bound by state court decisions as well as state statutes.))  Pennsylvania's substantive law will therefore apply regarding the issue of punitive damages.

Under Pennsylvania law, exemplary damages may be awarded only for conduct that is especially egregious or outrageous. Martin v. Johns-Manville Corp., 494 A.2d 1088, 1096-97 (Pa. 1985). Punitive damages are appropriate to punish and deter only extreme behavior and, even in the rare instances in which they are justified, are subject to strict judicial controls. The conduct must evince the defendant's evil motive or reckless indifference to the rights of others. Chambers v. Montgomery, 192 A.2d 355, 358 (Pa. 1963). The phrase "reckless indifference to the interests of others" has sometimes been referred to as "wanton misconduct," which means that "the actor has intentionally done an act of an

unreasonable character, in disregard to a risk known to him or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow." McClellan v. HMO, 604 A.2d 1053, 1061 (Pa. Super. 1992)(quoting Evans v. Philadelphia Transp. Co., 212 A.2d 440, 443 (Pa. 1965)).

Pennsylvania has adopted § 908 of the Restatement (Second) of Torts and accompanying comments regarding the imposition of punitive damages. Section 908(2) provides:

> Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others. In assessing punitive damages, the trier of fact can properly consider the character of the defendant's act, the nature and extent of the harm to the plaintiff, that the defendant caused or intended to cause and the wealth of the defendant.

Restatement of Torts (Second) § 908(2).

Moreover, the Pennsylvania Supreme Court has reiterated the exacting standards for a Plaintiff to prevail on a punitive damages claim. "[The] assessment of punitive damages are proper when a person's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton, or reckless conduct, and are awarded to punish that person for such conduct." SHV Coal, Inc. v. Continental Grain Co., 587 A.2d 702, 704 (Pa. 1991); see also Neal v. Carey Canadian Mines, Ltd., 548 F. Supp. 357, 377 (E.D. Pa. 1982). Importantly, punitive damages may

not be awarded for misconduct, "which constitutes ordinary negligence such as inadvertence, mistake and errors of judgment." Martin, 494 A.2d at 1097.

> **B. If genuine issues of material fact exist as to whether Defendants violated the Regulations and as to whether Defendants' conduct was so outrageous as to warrant an award of punitive damages in this case.**

In this case, Plaintiff alleges that she is entitled to punitive damages as Defendants acted with reckless indifference to her rights and safety, as well as to that of the traveling public, based upon a series of alleged violations. First, Plaintiff alleged in her Amended Complaint that Micou violated the following parts of the Regulations: (1) operating the Decker rig in violation of the hours of service regulations pursuant to 49 C.F.R. 395.3; (2) operating the Decker rig when he was too tired to do so safely in violation of 49 C.F.R. 392.3; (3) failing to properly record his duty status in violation of 49 C.F.R. 395.8; (4) failing to properly inspect the Decker rig prior to operation in violation of 49 C.F.R. 396.13; (5) failing to properly report the results of his inspection of the Decker rig in violation of 49 C.F.R. 396.11; and (6) operating the Decker rig when it was in such a condition as to likely cause an accident in violation of 49 C.F.R. 396.7. (See Am. Compl. at ¶ 25). Second, Plaintiff asserted in her Amended Complaint that Decker improperly supervised Micou while he violated the six above-referenced Regulations. Id. at ¶ 27.

In support of her claims for punitive damages, Plaintiff relies upon the expert liability reports prepared by the SALT Institute ("the SALT report") and Dr. Gerald P. Krueger ("Krueger report"). First, in the SALT report, Charles D. Roush, Jr. ("Mr. Roush") and Cecil H. Lane, Jr. ("Mr. Lane") determined that the commissions and omissions of Decker and Micou were, in combination, the precipitating factors leading to the collision at issue.[1] Specifically, several conclusions were rendered in the SALT report, including, but not limited to the following: (1) that Micou had been on duty for at least 75.5 hours in the eight days prior to and including the day of the collision in violation of 49 C.F.R. 395.3(b)(2) and that Decker should have been aware that Micou's hours of service had exceeded legal limits; (2) that Micou was driving in a state of low mental arousal or fatigue at the time of the collision in violation of 49 C.F.R. 392.3; (3) that Micou falsified his time logs in violations of 49 C.F.R. 395.8; (4) that Decker failed to have an effective procedure in place to verify drivers' hours of service and that Decker's flawed log auditing system allowed drivers to exceed hours of service limitations; (5) that Micou's conduct while employed at Decker was

---

[1] We note that in his affidavit, Mr. Lane explained that he reviewed the following relating to the case sub judice: the police accident investigation report; depositions of Micou, Michael J. Weiss, Carl Henry Russell, Jeanne Steinman, Joyce Wiegmann; as well as multiple documents produced by Decker in this case relative to the requirements of the Federal Motor Carrier Safety Regulations. (See Rec. Doc. 41, Aff. of Mr. Lane, at ¶ 4).

outrageous as he knew the hours of service regulations were in place to prevent fatigued drivers from operating large and heavy commercial motor vehicles; and (6) that Decker's policy, procedures and actions were outrageous in that their management and employees knew the hours of service regulations were in place to protect the safety of the monitoring public and knew hours of service was a problem in their operations. "Decker had the ability to verify their drivers' reported hours of service, rather they merely conducted face audits of logs which was an insufficient method to identify and prevent repeated hours of service violations." (See Rec. Doc. 36, Ex. A, at 19-26).

Second, the Krueger report, which was prepared by Dr. Krueger, who was retained as a driver fatigue expert by the Plaintiff, concluded that Micou momentarily fell asleep with a microsleep (sleep lapse) just prior to the collision.[2] (See Rec. Doc. 45, Ex. E, at 19). "It is my professional opinion that Mr. Micou irresponsibly placed himself in a situation where he experienced drowsiness, loss

---

[2] The Krueger report reveals that Dr. Krueger reviewed the following documents pertaining to the case sub judice in preparing the report: Plaintiff's Amended Complaint; Defendants' answer; Police Accident Investigation; Driver's Accident Statement; P.A.M. Transportation Services Movement Display forms concerning the Decker Transport truck that Micou drove from June 27, 2002 through October 3, 2002; copy of Young Claims Service truck body shop estimate of repairs and photocopies of damage done to Micou's tractor-trailer as a result of the collision on September 22, 2002; Decker Drivers Payroll Recap Reprint records for Micou from July 23, 2002 through September 23, 2002; Micou's reconstructed Driver Daily Logs dated September 14, 2002 through September 22, 2002 and reconstructed by members of the SALT Institute; Micou's deposition; Mrs. Wiegmann's deposition; and Mrs. Steinman's deposition. (See Rec. Doc. 45, Ex. E, at 15-16).

of alertness, inattention, and a microsleep which caused him to fall asleep for a short time just prior to the crash; and that the crash could have been avoided if Mr. Micou had properly complied with the Hours of Service regulations, managed his sleep, work-rest scheduling, and took rest-breaks from driving." Id.

In the Motion, Defendants argue that the SALT report lacks a sufficient factual foundation to be reliable, assigns arbitrary lengths of time for Micou to perform on-duty, non-driving activities, such as pre and post-trip inspections, allocates an unreasonable and unreliable amount of on-duty, non-driving time to the eight days prior to the accident, erroneously relies upon entries in the Movement Records documenting Micous' travels prior to the accident which were not entered via the Qualcomm GPS system ("Qualcomm"), and that the SALT report completely fails to produce facts required to impose punitive damages. In support thereof, Defendants point to the report of their expert, Hugh Galbreath, owner and operator of Galbreath Consulting Service, a Transportation Consulting Firm, who disagreed with conclusions reached in the SALT report. (See Rec. Docs. 36, Ex. C; 45, Ex. C).

After a careful review of the record, we conclude that read in the light most favorable to the Plaintiff as the nonmoving party, the SALT report and the Krueger report show that genuine issues of material fact exist as to whether Defendants

violated the Regulations. Moreover, when examining the evidence in the light most favorable to the Plaintiff, genuine issues of material fact exist as to whether Defendants' conduct was so outrageous as to warrant an award of punitive damages in this case.

With respect to Micou, a reasonable jury could conclude that: logging more than seventy hours during an eight-day period; operating the Decker rig when he was too tired to do so safely as evidenced by Micou's initial statement on a company accident form that he "momentary [sic] blanked out," his inability to make a decision relative to taking steps to avoid colliding with a slower moving vehicle traveling ahead of his vehicle, his inability to perceive the passage of time from the point when he realized the vehicle ahead was moving slowly to when he collided with the rear of it, and his failure to disengage the cruise control on a vehicle with which he was familiar; combined with falsifying his logs, all in violation of Department of Transportation safety regulations constitutes "reckless indifference to the rights of others." See 49 C.F.R. 395.3(b)(2), 392.3, and 395.8. A reasonable jury similarly could find that: failure to monitor Micou's conduct; failure to make an adequate and proper investigation and inquiry into Micou's driving and employment record; awareness of Micou's prior accident of September 17, 2002 yet failure to conduct any investigation into Micou's hours of service;

Micou's involvement in five preventable accidents/incidents while employed at Decker; Micou's participation in three accidents and two suspensions of his driving privileges between 1999 and 2002, prior to being hired by Decker; Decker re-dispatching Micou even though he had exceeded his hour of service limitations; and failure to have effective procedures in place to verify drivers' hours of service when Decker knew that hours of service regulations were in place to protect the safety of the monitoring public, constitutes "reckless indifference to the rights of others" and accordingly warrants the imposition of punitive damages against Decker.[3]

---

[3] Defendants contend that the final conclusions of the SALT report that criticize Decker's hiring and retention of Micou as a company driver are irrelevant as Plaintiff's alleged injuries can solely be a result of the accident that occurred on September 22, 2002. (See Defs.' Br. Supp. Mot. Partial Summ. J. at 16-17).

Plaintiff's Amended Complaint however raised a negligent entrustment claim against Decker and asserted violations including, but not limited to Decker's failure to require Micou to complete an application for employment and Decker's failure to make a proper investigation into Micou's driving and employment record. (See Am. Compl. at ¶¶ 22, 27). Moreover, as we have determined herein, viewing the evidence in the light most favorable to the Plaintiff, genuine issues of material fact exist as to whether Defendants violated the Regulations and as to whether Defendants' conduct was so outrageous as to warrant an award of punitive damages in this case. Genuine issues of fact therefore exist regarding whether Decker was negligent in hiring and employing Micou and whether Defendants' conduct constitutes reckless indifference to the rights of others. See, e.g., Holben v. Midwest Emery Freight System, Inc., 525 F. Supp. 1224 (W.D. Pa. 1981)(Plaintiff filed an action for injuries he received when he was struck from the rear by an employee of defendant employer. "We cannot find that there is no genuine issue of material fact surrounding the claim for punitive damages....Haulmark was aware of its employee's driving record, including several accidents, traffic violations, and a discharge by a prior employer because of his accident record while employed by it.").

Accordingly, we disagree with Defendants' assertion that any evidence relating to events prior to or following the day of the accident are irrelevant to this case.

13

At this juncture we note that the holding in <u>Burke v. Maassen</u>, 904 F.2d 178 (3d Cir. 1990), to which Defendants direct the Court in their submission, does not compel the opposite result. <u>See</u> <u>Wang v. Marzani</u>, 885 F. Supp. 74, 79 (S.D.N.Y. 1995). As we briefly addressed in our prior Order, in <u>Burke</u>, the Third Circuit overturned a jury's award of punitive damages against a tractor-trailer driver who drove too many hours in violation of federal safety regulations. <u>See</u> <u>Burke</u>, 904 F.2d at 183-84. The Third Circuit applied the principles of § 908(2) and held that the evidence in the case did not support an award of punitive damages when a truck driver fell asleep at the wheel and caused an accident, even though he had lied on his application about his driving experience and had violated federal safety regulations that limited the hours that may be driven in a single day. <u>See</u> <u>Lindsay v. Kvortek</u>, 865 F. Supp. 264, 268 (W.D. Pa. 1994). Importantly, as the <u>Wang</u> court noted, in <u>Burke</u>, the court made its finding after trial, concluding that the plaintiff had failed to establish that the driver consciously appreciated the risk he had created. <u>Id.</u> at 183. The Third Circuit therefore considered it crucial that the record was critically deficient of evidence showing that the driver consciously appreciated the risk of fatigue and the potential for fatal accidents that accompanies driving for more than ten hours. <u>Id.</u> In this case, as Plaintiff submits, Micou testified that he was aware that the hours of service regulations were in place to

14

prevent drivers from falling asleep behind the wheel and causing death or serious injuries. (See Rec. Doc. 41, Ex. 2, at 15). A further distinguishing factor between this case and that of Burke is that in the case sub judice, Plaintiff has not had the opportunity to offer her proof at trial regarding her punitive damages claims and genuine issues of material fact exist as to whether Defendants' conduct was so outrageous as to warrant an award of punitive damages.

### C. Whether specific Regulations relied upon in Plaintiff's Amended Complaint should be dismissed.

In the Motion, Defendants argue that the following three Regulations alleged by Plaintiff in her Amended Complaint to have been violated by Defendants are not addressed by either the SALT report or the Krueger report:   (1) failure to properly inspect the Decker rig prior to operation in violation of 49 C.F.R. 396.13; (2) failure to properly report the results of his inspection of the Decker rig in violation of 49 C.F.R. 396.11; and (3) operation of the Decker rig when it was in such a condition as to likely cause an accident in violation of 49 C.F.R. 396.7. (See Defs.' SMF at ¶ 3). In addition, Defendants assert that Plaintiff's expert liability reports fail to address whether Decker's training or supervision of Micou's rig inspections was negligent. Id. at ¶ 4.

In her answer to Defendants' Statement of Material Facts, Plaintiff admits that her expert liability reports failed to address the above-referenced Regulations,

as well as the issue of whether Decker's training or supervision of Micou's rig inspections was negligent.  (See Rec. Docs. 41, 43).   Moreover, after carefully reviewing the record and taking all of the evidence in the light most favorable to the Plaintiff, no facts have been adduced through discovery indicating that Defendants violated the above Regulations and Decker's training or supervision of Micou's rig inspections.

We will therefore grant Defendants' Motion for Partial Summary Judgment with regard to the above three Regulations, as well as the issue of whether Decker's training or supervision of Micou's rig inspections.  Plaintiff's reliance on the above issues is dismissed with prejudice in both Plaintiff's negligence and punitive damages claims of her Amended Complaint.

**NOW, THEREFORE, IT IS ORDERED THAT:**

    1.    Defendants' Motion for Partial Summary Judgment (doc. 33) is granted in part and denied in part to the following extent:

        a.    Defendants' Motion is granted with respect Plaintiff's reliance

>   on the following Regulations: (1) failure to properly inspect the Decker rig prior to operation in violation of 49 C.F.R. 396.13; (2) failure to properly report the results of his inspection of the Decker rig in violation of 49 C.F.R. 396.11; and (3) operation of the Decker rig when it was in such a condition as to likely cause an accident in violation of 49 C.F.R. 396.7. Additionally, Defendants' Motion is granted regarding Plaintiff's assertion that Decker's training or supervision of Micou's rig inspections was negligent.
>
>   b.   Defendants' Motion is denied in all other respects.
>
> 2. Defendants' Motion in Limine to Preclude Testimony Regarding Improper Inspection and Faulty Condition of Decker Truck (doc. 50) is denied as moot.[4]
>
> 3. Defendants' Motion in Limine to Preclude Testimony Regarding Alleged J&R Schugel Driver At the Scene of the Accident (doc. 58) is granted as unopposed.[5]

---

[4] By granting Defendants' Motion for Partial Summary Judgment in part, the Court has rendered the above-referenced Motion in Limine moot as all evidence addressed within the Motion is no longer relevant to this case.

[5] We note that at the pretrial conference in this matter, Plaintiff's counsel told the Court that he did not oppose the above-referenced Motion in Limine, nor did he file a brief in

                                         <u>s/ John E. Jones III</u>
                                         John E. Jones III
                                         United States District Judge

---

opposition thereto.